IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

KEVIN JULIUS HANSON,

 Plaintiff,

v.               CIVIL ACTION NO. 3:20-cv-00432

ANDREW SAUL,
Commissioner of Social Security,

 Defendant.


**PROPOSED FINDINGS & RECOMMENDATION**

Plaintiff Kevin Julius Hanson ("Claimant") seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–33, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–83f. (ECF No. 2.) By standing order entered on January 4, 2016, and filed in this case on June 25, 2020, this matter was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 4.) Presently pending before this Court are Claimant's Memorandum in Support of Plaintiff's Motion for Judgment on the Pleadings (ECF No. 15) and the Commissioner's Brief in Support of Defendant's Decision (ECF No. 16).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY**

Claimant's request to reverse the Commissioner's decision (ECF No. 15), **GRANT** the Commissioner's request to affirm his decision (ECF No. 16), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

## I. BACKGROUND

### A. *Information about Claimant and Procedural History of Claim*

Claimant was 32 years old at the time of his alleged disability onset date and 35 years old on the date of the decision by the Administrative Law Judge ("ALJ"). (*See* Tr. at 201, 207.)[1] He completed two years of college. (*Id.* at 231.) Most recently, he worked as a maintenance worker through a "temp service," and he has also been employed as a sales floor clerk at a hardware store, a bank teller, a cashier at a retail store, and a waiter. (*Id.*) Claimant alleges that he became disabled on January 1, 2017, due to bipolar disorder, anxiety, and depression. (*Id.* at 205, 230.)

Claimant filed his applications for benefits on September 20, 2017. (*Id.* at 24, 201–15.) His claims were initially denied on January 25, 2018, and again upon reconsideration on April 3, 2018. (*Id.* at 113–18, 130–43.) Thereafter, on April 23, 2018, Claimant filed a written request for hearing. (*Id.* at 125–29.) An administrative hearing was held before an ALJ on July 22, 2019, in Huntington, West Virginia. (*Id.* at 38–58.) On August 28, 2019, the ALJ rendered an unfavorable decision. (*Id.* at 21–37.) Claimant then sought review of the ALJ's decision by the Appeals Council on October 25, 2019. (*Id.* at 197–200.) The Appeals Council denied Claimant's request for review on May 19, 2020, and the ALJ's decision became the final decision of the Commissioner on that date. (*Id.* at 1–7.)

---

[1] All references to "Tr." refer to the Transcript of Proceedings filed in this action at ECF No. 14.

Claimant timely brought the present action on June 24, 2020, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2.) The Commissioner filed an Answer (ECF No. 13) and a transcript of the administrative proceedings (ECF No. 14). Claimant subsequently filed his Memorandum in Support of Plaintiff's Motion for Judgment on the Pleadings (ECF No. 15), and in response, the Commissioner filed his Brief in Support of Defendant's Decision (ECF No. 16). As such, this matter is fully briefed and ready for resolution.

B. *Relevant Medical Evidence*

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and summarizes it here for the convenience of the United States District Judge.

1. *Mental Health Treatment*

More than four years prior to the alleged onset of his disability, in September 2012, Claimant was voluntarily hospitalized for about a week after experiencing delusions, paranoia, and anxiety. (Tr. at 314, 318.) Shortly after being discharged, Claimant returned to the hospital in early October 2012 and related suicidal ideation. (*Id.* at 367.) He spent ten days in the hospital before being discharged again. (*Id.*)

On August 8, 2015, shortly after relocating to West Virginia, Claimant presented to a mental health treatment facility for a psychiatric evaluation upon a referral from his doctor. (*Id.* at 417.) He reported past hospitalizations and treatment for mental health symptoms but stated that he was currently "doing very well" on his prescribed medication. (*Id.*) A mental status examination was normal. (*Id.* at 418.) Claimant was diagnosed with bipolar disorder and opioid dependence that was being treated at another facility. (*Id.* at 419.) He was directed to continue his previously prescribed medication and to

3

return in three months for his next appointment. (*Id.* at 420.) The psychiatrist listed his prognosis as "Good." (*Id.*) Claimant returned to the facility on November 14, 2015, and reported that "he is doing good," his mood was stable, and he had no complaints. (*Id.* at 432.) A mental status examination was again normal. (*Id.* at 433–34.)

Claimant next presented to the mental health treatment facility on September 22, 2016. (*Id.* at 437.) He again stated that "he is doing good" and had a stable mood and no complaints. (*Id.*) A mental status examination was normal. (*Id.* at 438–39.) The psychiatrist directed Claimant to continue using his medication and "to stay in [treatment]" and instructed him to follow up in five months. (*Id.* at 440.) He did not return until April 6, 2017, three months after his alleged onset date. (*Id.* at 442.) The psychiatrist noted that he "continues to take [his medications] and [is] doing well." (*Id.*) A mental status examination was normal. (*Id.* at 443–44.)

On July 10, 2019, shortly before the administrative hearing in this case was scheduled to take place, Claimant presented to the emergency department at a local hospital, complaining of "Suicidal ideation and paranoid delusion." (*Id.* at 515.) Upon mental status examination, Claimant appeared his age and was "Appropriately groomed and well kempt with clean-shaven face." (*Id.* at 520.) His speech was "Slightly pressured with increased rate and volume, but appropriate tone and rhythm." (*Id.*) He was noted to be paranoid, and his "Affect is slightly blunted, but congruent with stated mood." (*Id.*) There was "No significant psychomotor agitation or retardation present." (*Id.*) Although Claimant's thought processes were observed to be "Linear and organized," he endorsed suicidal ideation and "intense paranoid delusions." (*Id.*) He reported "near constant auditory or visual hallucinations." (*Id.*) He was fully oriented, and his memory and concentration were intact. (*Id.*) He had impaired judgment but intact insight. (*Id.* at

520–21.) Claimant was admitted for "inpatient psychiatric hospitalization for safety and stabilization." (*Id.* at 521.) He was discharged on July 19, 2019. (*See id.* at 527.)

    2. *Consultative Psychological Examination: Nicole M. Smith, M.A.*

On December 29, 2017, Claimant underwent a consultative psychological examination with licensed psychologist Nicole M. Smith, M.A. ("Ms. Smith"). She stated that Claimant related that he was applying for DIB and SSI benefits because he suffered from hallucinations and paranoia and experienced episodes of depression and mania that lasted "for weeks to months." (*Id.* at 467.) She also noted that Claimant reported previous hospitalizations for psychological symptoms and treatment for substance abuse. (*Id.*) In reciting Claimant's presenting symptoms, Ms. Smith stated that he "described an uninterrupted period of illness during which, at some point, there was a major depressive episode, a manic episode, or a mixed episode concurrent with symptoms that meet criterion A for schizophrenia. He also experienced delusions and hallucinations for at least 2 weeks in the absence of prominent mood symptoms." (*Id.* at 468.) She observed "evidence of paranoia, grandiosity, and a history of delusions." (*Id.*) She also noted that he reported a history "of recurrent and unexpected panic attacks and fear of additional attacks" and a history of cannabis and opioid use. (*Id.*)

Upon mental status examination, Ms. Smith observed that Claimant was "casually dressed with proper hygiene" and "adequately groomed and appeared his stated age." (*Id.* at 470.) He had a cooperative attitude with good eye contact, and his "Speech was clear and connected, yet loquacious at times." (*Id.*) Ms. Smith observed that he was fully oriented and had a "slight[ly] anxi[ous]" mood and "slightly restricted" affect. (*Id.*) Claimant's "Thought processes were clear and connected with occasional circumstantialities and tangentialities," and his "Thought content was notable for

paranoia, grandiosity, and delusions particularly thinking he is another person from the past or someone who has been reincarnated." (*Id.*) Ms. Smith noted no "unusual perceptual experiences during the evaluation" but stated that Claimant "reported a history of intermittent visual and auditory hallucinations." (*Id.*) Claimant had good judgment and insight and unremarkable psychomotor behavior, and he "denied suicidal and homicidal ideation." (*Id.*) His immediate, recent, and remote memory were normal. (*Id.*) He had average concentration, "mildly deficient" persistence, and normal pace. (*Id.*) Ms. Smith noted that Claimant had "moderately-to-severely impaired" social functioning during the examination. (*Id.*)

She diagnosed Claimant with "Schizoaffective Disorder, Bipolar Type" based on her review of his treatment records, Claimant's reports of "a history of an uninterrupted period of illness during which at some point there was a major depressive episode or manic episode or a mixed episode concurrent with symptoms that meet criterion A for schizophrenia" and "delusions and hallucinations for at least 2 weeks in the absence of prominent mood symptoms," and her examination findings that Claimant talked "excessively," had a "slightly anxious" mood and a "slightly restricted" affect, his "Thought processes were remarkable for cincumstantialities and tangentialities," and "There was evidence of paranoia, grandiosity, delusional thought processes, and a history of recent perceptual disturbances." (*Id.* at 470–71.) Ms. Smith also diagnosed Claimant with "Panic Disorder" based on his "report of a history of recurrent and unexpected panic attacks and fear of additional attacks." (*Id.*) She diagnosed Claimant with "Cannabis Use Disorder, Mild, in Sustained Remission" based on her review of Claimant's treatment records and his statement that "he has not used cannabis in approximately 2 years." (*Id.*) Lastly, she diagnosed Claimant with "Opioid Use Disorder, on Maintenance Therapy,

Mild" based on her review of his treatment records and his reported "history of opioid use associated with tolerance and withdrawal symptoms." (*Id.* at 471.)

In summarizing Claimant's self-reported social functioning, Ms. Smith noted that he said he did not go out in public much aside from attending medical appointments, he did not have many hobbies or close friends, and he did not use a checking account or pay bills but "manages his own finances." (*Id.*) In summarizing his self-reported daily activities, Ms. Smith noted that Claimant told her he could "perform all basic self-care duties without assistance" and feed himself, his mother did most of the household chores but he would occasionally sweep, he went to his substance abuse treatment center weekly, and he played video games, watched television, or sat in silence. (*Id.* at 472.) Ms. Smith concluded her report by stating that Claimant "may require assistance in managing his funds, should an award be made." (*Id.*)

C. *Sequential Evaluation Process*

An individual unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" is considered to be disabled and thus eligible for benefits. 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential evaluation process to aid in this determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). The ALJ proceeds through each step until making a finding of either "disabled" or "not disabled"; if no finding is made, the analysis advances to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985); *see Bird v. Comm'r of Soc. Sec.*, 699 F.3d

337, 340 (4th Cir. 2012) ("To establish eligibility for . . . benefits, a claimant must show that he became disabled before his [date last insured].").

At the first step in the sequential evaluation process, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step.

At the second step, the ALJ considers the combined severity of the claimant's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ gleans this information from the available medical evidence. *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements will result in a finding of "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

Similarly, at the third step, the ALJ determines whether the claimant's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)).

"If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity" ("RFC") before proceeding to the fourth step. *Mascio*, 780 F.3d at 635; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). The

8

claimant's RFC reflects "her ability to perform work despite her limitations." *Patterson v. Comm'r of Soc. Sec.*, 846 F.3d 656, 659 (4th Cir. 2017); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (defining claimant's RFC as "the most the claimant can still do despite physical and mental limitations that affect his ability to work" (alterations and internal quotation marks omitted)); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ "first identif[ies] the individual's functional limitations or restrictions and assess[es] his or her work-related abilities on a function-by-function basis," then "define[s] the claimant's RFC in terms of the exertional levels of work." *Lewis*, 858 F.3d at 862. "In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments . . . including those not labeled severe" as well as "all the claimant's symptoms, including pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Monroe*, 826 F.3d at 179 (alterations and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a).

When the claimant alleges a mental impairment, the first three steps of the sequential evaluation process and the RFC assessment are conducted using a "special technique" to "evaluate the severity of [the] mental impairment[]." 20 C.F.R. §§ 404.1520a(a), 416.920a(a); *see Patterson*, 846 F.3d at 659. Considering the claimant's "pertinent symptoms, signs, and laboratory findings," the ALJ determines whether the claimant has "a medically determinable mental impairment(s)" and "rate[s] the degree of functional limitation resulting from the impairment(s)" according to certain criteria. 20 C.F.R. §§ 404.1520a(b), 416.920a(b); *see id.* §§ 404.1520a(c), 416.920a(c). "Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment." *Patterson*, 846 F.3d at 659; *see* 20 C.F.R. §§ 404.1520a(d),

416.920a(d). "If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities." *Patterson*, 846 F.3d at 659.

After assessing the claimant's RFC, the ALJ at the fourth step determines whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Monroe*, 826 F.3d at 180. If she does not, then "the ALJ proceeds to step five." *Lewis*, 858 F.3d at 862.

The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether she can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this point, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Lewis*, 858 F.3d at 862 (quoting *Mascio*, 780 F.3d at 635). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* (quoting *Mascio*, 780 F.3d at 635). If the claimant can perform other work, the ALJ will find her "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot perform other work, the ALJ will find her "disabled." *Id.*

Applying the sequential evaluation process in this case, the ALJ concluded that Claimant satisfied the insured status requirements and was insured through the date of the decision. (Tr. at 27.) She further determined that Claimant had not engaged in substantial gainful activity since the alleged onset of his disability. (*Id.*) She found that Claimant's panic disorder, schizoaffective disorder, and bipolar disorder constituted "severe" impairments. (*Id.*) However, she found that those impairments, or a

combination thereof, failed to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 27–28.) Upon assessing Claimant's RFC, the ALJ determined that he is able "to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can perform simple routine tasks in a routine work environment that involves few changes, involves occasional superficial tasks oriented contact with coworkers and supervisors, and never requires contact with the public." (*Id.* at 28.)

The ALJ concluded that given the limitations imposed by the Claimant's RFC, he was unable to perform his past relevant work. (*Id.* at 32.) She noted that Claimant is "a younger individual" with "at least a high school education" and that "[t]ransferability of job skills [was] not material to the determination of disability." (*Id.*) Because the ALJ determined that Claimant's "ability to perform work at all exertional levels has been compromised by nonexertional limitations," she enlisted a vocational expert to aid in her finding that Claimant is capable of working as a commercial cleaner, sorter, or machine cleaner. (*Id.* at 32–33.) As a result, the ALJ concluded that Claimant was not "under a disability . . . from January 1, 2017, through the date of this decision." (*Id.* at 33.)

## II.     LEGAL STANDARD

This Court has a narrow role in reviewing the Commissioner's final decision to deny benefits: it "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

In other words, this Court "looks to [the] administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* (alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "In reviewing for substantial evidence, [this Court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Even if "reasonable minds [could] differ as to whether a claimant is disabled," this Court upholds the ALJ's decision if it is supported by substantial evidence. *Id.* (quoting *Craig*, 76 F.3d at 589).

### III. ANALYSIS

Claimant argues that the ALJ inadequately developed the record in this case because the consultative psychological examiner's findings "were vague" and that she failed to consider the combined effects of his severe mental impairments. (ECF No. 15 at 7–8.)[2] He asks this Court to reverse the Commissioner's decision and award him benefits or to reverse the Commissioner's decision and remand this matter to the ALJ. (*Id.* at 10.) The Commissioner responds that the ALJ complied with her duty to develop the record in this case and properly accounted for the combined effects of his mental disorders. (ECF No. 16 at 6–7.)

*A. Duty to Develop Record*

Claimant contends that the ALJ failed to fully develop the record in this case by not obtaining more information from consultative examiner Ms. Smith about her

---

[2] Claimant also argues that the ALJ failed "to produce evidence sufficient to rebut the presumption of disability." (ECF No. 15 at 8–10 (emphasis deleted).) However, no such presumption exists. *Collins v. Saul*, No. 3:19-cv-00824, 2020 WL 4516855, at *13 (S.D.W. Va. July 17, 2020), *adopted by* 2020 WL 4508312 (S.D.W. Va. Aug. 5, 2020); *see Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985) ("The ultimate burden to prove disability lies on the claimant."). Thus, Claimant's argument is without merit.

12

statement that Claimant "may require assistance in managing his funds, should an award be made." (ECF No. 15 at 7–8 (citing Tr. at 472).) "[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on evidence submitted by the claimant when that evidence is inadequate." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986); *Thompson v. Colvin*, No. 3:14-cv-15949, 2015 WL 13746683, at *13 (S.D.W. Va. June 30, 2015) ("[A]n ALJ has the duty to fully and fairly develop the record."), *adopted by* 2015 WL 5626513 (S.D.W. Va. Sept. 24, 2015). However, the ALJ "is not required to act as Claimant's counsel" and may "presume that Claimant's counsel presented Claimant's strongest case for benefits." *Perry v. Astrue*, No. 3:10-cv-01248, 2011 WL 5006505, at *15 (S.D.W. Va. Oct. 20, 2011). In other words, "[C]laimant, through counsel, [may not] rest on the record . . . and later fault the ALJ for not performing a more exhaustive investigation." *Id.* (quoting *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008)).

To that end, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Id.* at *16 (quoting *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001)). Claimant seems to suggest that Ms. Smith's statement about his ability to manage his benefits constitutes ambiguous evidence. (ECF No. 15 at 8.) However, it does not appear that the ALJ relied on that statement in making her decision,[3] and Claimant does not explain how it indicates that further functional restrictions are warranted. He also seems to argue that Ms. Smith should have offered medical opinions

---

[3] For this reason, Claimant's reliance on *Cox v. Barnhart*, 345 F.3d 606 (8th Cir. 2003), which is not binding on this Court, is misplaced. (ECF No. 15 at 8.) The Eighth Circuit in *Cox* held that the ALJ erred by crediting the unexplained opinions of the consultative examiner over those of the claimant's treating physicians, which were more favorable to the claimant. 345 F.3d at 609–10.

13

about his abilities. (*Id.* at 7–8.)  But "the absence of a medical opinion in a consultative examination report [does] not make the report incomplete."  20 C.F.R. §§ 404.1519n(c)(6), 416.919n(c)(6).

The administrative record must contain "sufficient medical evidence . . . to make an informed decision about [the claimant's] impairments." *Craft v. Apfel*, 164 F.3d 624 (4th Cir. 1998) (table), 1998 WL 702296, at *3; *Laney v. Astrue*, No. 3:09-cv-00780, 2011 WL 11889, at *11 (S.D.W. Va. Jan. 4, 2011) (stating that ALJ's duty to develop record is "to insure that the record contain[s] sufficient evidence upon which she could make an informed decision" (citing *Ingraham v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007))). There is simply no indication that the ALJ was unable to do so in this case. As such, the undersigned **FINDS** that she adequately developed the record.

B. *Combined Effects of Impairments*

Claimant also argues that the ALJ did not account for the combined effects of his severe mental impairments. (ECF No. 15 at 8.)  As part of the RFC assessment, the ALJ must evaluate the claimant's "ability to perform work despite her limitations" in light of "'all' relevant record evidence."  *Patterson*, 846 F.3d at 659 (citing 20 C.F.R. § 404.1520(e)).  In doing so, "the ALJ [is] required to consider the combined, synergistic effect of all of Claimant's medically determinable impairments, severe and non-severe, to accurately evaluate the extent of their resulting limitations on Claimant."  *Blankenship v. Astrue*, No. 3:11-cv-00005, 2012 WL 259952, at *12 (S.D.W. Va. Jan. 27, 2012) (citing *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989)).  "The ailments should not be fractionalized and considered in isolation; instead, their cumulative effect should be analyzed to determine the totality of their impact on the claimant's ability to engage in basic work activities." *Id.* (citing *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983)).

Here, in conducting her RFC assessment, the ALJ summarized the medical evidence of record relating to Claimant's mental disorders. (Tr. at 30–31.) In particular, she acknowledged that Claimant "has a history of treatment for bipolar disorder, mania, and delusions before his [alleged disability onset date]" that "were found to be in tandem with his heroin dependence," but his "treatment record proved devoid for [sic] continued limitations for several years." (*Id.* at 30.) She noted that "while [he] reported that he begun [sic] to experience mental limitations in January 2017, in the months leading up to [his] onset date, his treatment records showed that [he] was doing well and that his mood was stable." (*Id.*) The ALJ also referenced a recent "episode of decompensation in which he has called for help to handle his thoughts of suicide" but remarked that "providers found [his] appearance was good and found that his thoughts remained linear and organized, as his memory, concentration, and fund of knowledge all seemed appropriate." (*Id.* at 30–31.) She reviewed the findings from Claimant's December 29, 2017 consultative psychological examination, which reflected a largely normal mental status examination. (*Id.* at 30.) She rejected the state-agency psychological consultants' opinions that Claimant "would have no limitations in terms of carrying out detailed instructions" because they were inconsistent with examination findings showing "evidence of circumstantial and tangential thoughts" and "some degree of limitations in terms of paranoia and frustration both of which has [sic] caused him to experience some degree of decompensation." (*Id.* at 31.) And she partially credited Claimant's subjective complaints about his limitations, explaining "that while [he] reports that he experiences and has continued to experience episodes of anxiety, hallucinations, paranoia, and general mental dysfunction, treatment records have shown that [his] symptoms wax and wane and generally stabilize quickly with corrective treatment." (*Id.*)

15

In sum, the ALJ's written decision indicates that she considered the combined effects of Claimant's impairments on his ability to work. Notably, Claimant does not elaborate on the actual limitations caused by his conditions. (ECF No. 15 at 8.) "[A] diagnosis is insufficient to prove disability—rather, there must be resultant functional limitations precluding a claimant's ability to work." *Smith v. Berryhill*, No. 3:16-cv-11868, 2018 WL 3800039, at *9 (S.D.W. Va. July 17, 2018) (citing *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986)), *adopted by* 2018 WL 3795277 (S.D.W. Va. Aug. 9, 2018). Claimant bears the burden to demonstrate that the RFC assessment does not accurately reflect the restrictions he requires. *See Okes v. Berryhill*, No. 1:16-cv-08976, 2017 WL 4003028, at *5 (S.D.W. Va. Aug. 11, 2017), *adopted by* 2017 WL 3996419 (S.D.W. Va. Sept. 11, 2017). He has not met it here. As such, the undersigned **FINDS** that the ALJ's RFC assessment accounts for the combined effects of Claimant's impairments.

### IV.  CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Claimant's request to reverse the Commissioner's decision (ECF No. 15), **GRANT** the Commissioner's request to affirm his decision (ECF No. 16), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings

and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown. Copies of any objections shall be served on opposing parties and provided to Judge Chambers.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

ENTER: April 22, 2021

Dwane L. Tinsley
United States Magistrate Judge